(159 App. Div. 567.)

MANHATTAN BRIDGE THREE CENT LINE v. BROOKLYN HEIGHTS R. CO. et al.

(Supreme Court, Appellate Division, Second Department. December 5, 1913.)

1. STREET RAILROADS (§ 41*)—CONSTRUCTION—ACQUISITION OF FRANCHISES.

The consent of existing railroads with tracks on some of the same streets to be used for petitioner's proposed extension, to petitioner's use of their lines, where the routes are coincident, is not necessary to petitioner's right to cross their tracks where they intersect with its proposed route.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 21, 114; Dec. Dig. § 41.*]

2. STREET RAILROADS (§ 1*)—CONSTRUCTION—CONDITIONS PRECEDENT.

Before a street railroad can be constructed, all of the requirements of the Constitution must be met.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. STREET RAILROADS (§ 26*)—CONSTRUCTION—CONSENT OF ABUTTING OWNERS.

Under Const. art. 3, § 18, providing that no law shall authorize the construction or operation of a street railroad except upon the consent of the owners of one-half of the abutting property and of the local authorities having control of the street or highway upon which it is proposed to construct the railroad, and that, if the consent of the property owners cannot be obtained, permission may be granted by the Appellate Division of the Supreme Court upon the report of commissioners to determine the necessity of the line, and under Railroad Law (Consol. Laws 1910, c. 49) § 171, requiring the consent of the owners of one-half of the abutting property, a street railroad whose proposed route extends over numerous streets may be constructed along the streets upon which the property owners have consented, even though the property owners on all of the streets have not given their consent; the provision for application to the Supreme Court being to provide for the contingency of the nonconsent of the property owners of part of the proposed line.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 79–85; Dec. Dig. § 26.*]

Appeal from Special Term, Kings County.

In the matter of the petition by the Manhattan Bridge Three Cent Line against the Brooklyn Heights Railroad Company and others for the appointment of commissioners to determine compensation for carrying petitioner's tracks across those of defendants. From an order

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appointing the commissioners and from an order confirming their report (78 Misc. Rep. 220, 139 N. Y. Supp. 216), defendants appeal. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

Charles L. Woody, of Brooklyn, for appellants.

Almet Reed Latson, of New York City (Ward W. Pickard, of New York City, on the brief), for respondent.

THOMAS, J. The question is whether plaintiff may maintain proceedings to ascertain what compensation shall be made to defendants for carrying its tracks across those of the defendants in the Flatbush Avenue Extension and the manner of doing it. The debatable questions presented on the appeal are whether the plaintiff is entitled to maintain the proceeding, inasmuch as it has obtained only the required consent of property owners on the Flatbush Extension and not on its whole line, and has not obtained, and as found cannot obtain, the consent of other railway companies to operate over the tracks for more than 1,000 feet, as it will be necessary to do to fulfill the charter. The line along the Flatbush Extension is but a fragment of the chartered route, which is from the locality of Desbrosses Street Ferry in the borough of Manhattan through several streets to the Manhattan Bridge, thence over the bridge and in the borough of Kings through Flatbush Avenue Extension, Fulton street, Rockwell Place and a number of streets, to join again the Flatbush Avenue Extension.

[1] In the borough of Manhattan there are two or more railroads belonging to other companies, which for more than 1,000 feet are coincident with such route, and the owners thereof will not consent to their use by the plaintiff, and in the borough of Brooklyn two of the appellants as lessee or owner will not consent to a similar use of their tracks. The result at present is that the plaintiff cannot operate its proposed railway as its charter permits and demands. But the fact that it cannot agree with one or more persons for the acquisition of right of way does not impair its chartered rights or pervent its acquisition of other right of way in another part of its line. First comes the creation of the corporation, then the acquirement of the right to build and operate a railway, and later the construction and operation of the railway. But the acquisition of right of way must precede construction, and for this the company must be enabled. But a person, whose property for right of way can be had only by his consent, cannot use his nonconsent to prevent the taking of other of his property by condemnation, nor can a third person use such nonconsent to thwart the taking of his property. Why should either be permitted to do that? The franchise exists. The law does not make its existence or continuance dependent upon such consent. The corporation can fulfill its charter in all practicable directions; if in the end the road should not be duly built and operated, because the consent cannot be obtained and the right of way secured, then forfeiture may follow, unless the state meantime through its Legislature or other authorized agent make other provision. Thus in the end a nonconsenting railway company may

defeat the enterprise, but it cannot undo chartered rights or obstruct their exercise.

[2, 3] The more serious objection of the appellants is that the plaintiff has obtained the majority consent of the property owners only on one street, to wit, the Flatbush Avenue Extension, and not on its chartered route. Whatever the Constitution requires must be done as a condition precedent to this proceeding. Colonial City Traction Co. v. Kingston City R. R. Co., 153 N. Y. 540, 47 N. E. 810. What is it? The plaintiff's contention is:

(1) "That the street is the unit for the performance of conditions precedent to the operation of a street railway in the public highways"; (2) "that in making an application to condemn a private interest, the conditions precedent must be performed only in so far as they relate to the particular street in which the interest sought to be condemned is located"; and it relies upon G. & W. Ry. Co. v. N. Y. C. & H. R. R. R. Co., 163 N. Y. 228, 57 N. E. 498.

But the limit of the holding was that the right of one railway company to cross the tracks of another was dependent upon the consent of the local authorities and abutting property owners of a town wherein the crossing of other tracks was to be made, and that the like consent of the authorities and owners in villages wherein the road extended was not necessary. This is far from decision that for the purposes of consent each street is a unit, and that, if the property owners thereon consent, the company can exercise the right of eminent domain on that street. The Constitution (article 3, § 18) is:

"But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the Appellate Division of the Supreme Court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners."

The Railroad Law provides (section 171):

"A street surface railroad, or extension or branches thereof, shall not be built, extended or operated unless the consent in writing * * * of the owners in cities and villages of one-half in value, and in towns, not within the corporate limits of a city or village, of the owners of two-thirds in value, of the property bounded on and also the consent of the local authorities having control of that portion of a street or highway upon which it is proposed to build or operate such railroad, extension or branch shall have been first obtained."

May a railway be built on a street in a city even if no owner thereon consent, provided owners of one-half in value of the property on the remainder of the line consent? May the owners on one street by nonconsent defeat the enterprise and the wishes of a majority on the route? When the owner on a street consents, does he consent to the construction of a railroad on such street irrespective of its construction on the whole route proposed? The present plan proposes to use at least sixteen streets. Does the law require the majority consent on

each street or majority consent of the sixteen streets? May 15 streets in solido consent, and such consent to the construction of the line thereon be defeated by nonconsent of owners in Rockwell place, save by the interposition of the court? But if the owners on Rockwell Place consent, does such consent mean that the road may be built in Rockwell Place, although it cannot be built elsewhere, unless by the substituted consent of the court? But in such consent of the court is found the safeguard against the unjust prevention of the enterprise by the nonconsent of the owners on a single street. Such nonconsent could be no abiding obstacle. But if a majority on other streets may by their consent force the railroad on a nonconsenting street, the injury is irremediable.

The Constitution and statute requires the majority consent in value of the "property bounded on * * * a street or highway upon which it is proposed to construct or operate such railroad." The consent in terms is required on "a street" where construction is proposed, not on the route of combined streets. It was well known when such provision was adopted that street railways often pursued a line through several streets, although perhaps the line was known by some principal street occupied. The word "route" or "line" was the usual term and so commonly employed that the selection of "a street" for the purposes of consent has significance. There is such peculiarity in the term as to suggest that each street was particularized as a separate consenting factor. There is certainly some difficulty in the conception of the Legislature authorizing the construction or operation of a railroad on a street, which is a mere fragment of the authorized route. But the Constitution and statute are negative. Whatever the chartered route, the construction and operation must not invade a nonconsenting street, unless consent be given for it by order of the court. Hence I conclude that, if otherwise authorized, a street railway company may, upon obtaining the majority consent on a street, enter upon that street and construct its railway thereon. If there has been no decision to that effect, there has been none adverse to it.

It has been judicially stated that the object of the provision is to enable the property owner to give or to withhold his consent to the additional easement in the street that the company would acquire. G. & W. Ry. Co. v. N. Y. C. & H. R. R. R. Co., 163 N. Y. 229, 57 N. E. 498. Or, as said in Colonial City Traction Co. v. Kingston City R. Co., 153 N. Y. 540, 47 N. E. 810:

"The object of the statute is to protect the public against injury to the streets, without the consent of their representatives, and also to protect the property of the citizen against injury without his personal consent or the consent of a majority of the abutting owners, or, where the refusal to consent is unreasonable, the order of the Appellate Division of the Supreme Court."

In Matter of People's R. Co., 112 N. Y. 578, 20 N. E. 367, the decision in its effect tends to the conclusion reached. The petition for the substituted consent related to certain streets, but did not include all the streets on the chartered line, and notice of the application was given only to the property owners on the streets included. It was decided

that such proceeding could be maintained, and that the determination bound only the owners along the streets included, and that independent application could be made for the other streets. The logic of this decision is that the commissioners and court do not consent for the aggregate owners on the route, but for the owners on each street. The confirmed report of the commissioners that the road should be built was in substitution of the consent of the property owners on the streets in question. Unless the company, in other respects enabled, could then enter on the streets and build the railway, of what avail was the proceeding? Having obtained the order, it was not necessary as to the included streets to await the consent of the owners on other streets. They could be heard on an application as to other streets, and the court irrespective of the earlier determination could determine that the railway should not be built on the streets where their property was, but could not thereby reverse its former decision that it should be built on the streets first presented. If owners on the whole route must consent and the commissioners consent for them, how could they on different occasions make determination for those on one street and those on another—determination may be that the road should be built on some, may be that it should not be built on others? It should be noted that this proceeding does not involve the construction or operation of the railway but is to determine compensation for crossing defendant's railway and the manner of doing. Whether it has proper authority from the Public Service Commissioners to operate a portion of its line before completing and operating along its entire route is not involved. So far as the right to build or to operate has been discussed, it has been in furtherance of the discussion of what consent of the property owners is necessary.

The orders and judgment should be affirmed, with costs. All concur.

---

(159 App. Div. 517.)

### PENNOCK v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department.   December 5, 1913.)

WATERS AND WATER COURSES (§ 172*)—CONSTRUCTION OF RAILROAD—CULVERTS—INJURIES—NEGLIGENCE.

   A railroad company authorized to construct its road over a stream running through its right of way is not liable to an adjoining owner for injuries to his land by the overflow of the stream caused by the collapsing of a culvert embankment in the course of construction, if the work was done wholly on the company's property and the collapsing of the embankment was not a necessary result of the work, unless it was caused by the company's negligence; the law of nuisance not being involved.